# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROBERT JACKSON, SR.,  :
ROBERT JACKSON, JR. and  :
MAXINE V. PRIDE,  : CIVIL ACTION
  :
    Plaintiffs  :
  : NO. 18-CV-3287
    vs.  :
  :
MYCHAEL ALTHOUSE,  :
MAVIS DISCOUT TIRES, POLICE  :
OFFICER WILLIAM J. SUMMERFIELD:
POLICE OFFICER JOHN DOE and  :
HATFIELD TOWNSHIP  :

## MEMORANDUM AND ORDER

**JOYNER, J.**                                       **February 6, 2019**

    This civil rights action has been brought before the Court on Motion of Defendants William J. Summerfield and Hatfield Township for dismissal of Plaintiffs' Complaint against them. For the reasons which follow, the motion shall be granted in part and denied in part.

## History of the Case

    According to the Complaint filed in this matter, on or about August 18, 2016, Plaintiffs Robert Jackson Sr. and his son, Robert Jackson, Jr. went to the Mavis Discount Tire Store in Hatfield, Pennsylvania to pick up and pay for a set of tires which they had pre-ordered. When Plaintiff Robert Jackson, Sr.

1

presented his bank debit card to the store manager, Defendant Mychael Althouse, to pay for the tires, Defendant Althouse asked for and Plaintiff Jackson, Sr. presented valid identification. Defendant Althouse, however, for some unknown reason, went into the store's back room and called the Hatfield Police Department claiming that Plaintiffs were attempting to commit fraud.

In response to Althouse' call, Defendant Officer William Summerfield responded to the store, together with an unidentified Officer (designated in the Complaint as John Doe) and detained and questioned the plaintiffs.  More particularly, the Complaint avers that: "[w]hen the police arrived at the defendant's store, defendant – Mychael Althouse – pointed out plaintiffs in response to which defendants – Officer Summerfield and/or Officer Doe – put his hand over his gun and ordered plaintiff – Robert Jackson, Jr. – to turn around.  When plaintiff – Robert Jackson, Jr. – asked said officer what he was supposed to turn around for, said officer then unsnapped his gun holster, putting said plaintiff in fear for his life."  (Compl. ¶s 23, 24).  "When plaintiff – Robert Jackson, Jr. stepped outside based on orders by the defendant officer – he was able to see what appeared to be a SWAT team of police officers nearby, thereby further putting said plaintiff in fear for his life."  (Compl. ¶28).  In addition, "the defendant officers ordered plaintiff – Robert Jackson, Jr. – to flip his pockets

2

inside out," and "[w]hile the defendant officer was detaining plaintiff – Robert Jackson, Jr. – outside of the store, the other police officer defendant ordered Plaintiff – Robert Jackson, Sr. - to provide his identification and debit card and did not allow Robert Jackson, Sr. to leave the store, such action constituting an arrest/detainment." (Compl., ¶s 29, 30). "During all of the above and below activity, it was made clear by defendants – Officer Summerfield and/or Officer Doe – that plaintiffs were being forcibly detained and were not free to leave and were not free to disobey any of the instructions given by these police officers." (Compl., ¶26).

The Complaint also alleges that Plaintiffs Jackson had been driven to the store by Plaintiff Maxine Pride, Plaintiff Jackson, Jr.'s mother, who while her son and his father were being detained, was sitting in her car waiting for them. The Plaintiffs allege that Ms. Pride, too, was detained and that her car was searched "without a warrant, probable cause, reasonable suspicion, or any other reasonable basis." (Compl., ¶s 31, 32). Although Plaintiff Pride was told she was not free to leave until after the search of her car had been completed, after the search ended, she was told that she was free to and should, go. Ms. Pride, however, told the officers that she needed to stay as she was the only ride for her son and his father. (Compl., ¶ 33).

Subsequently, the defendant officer(s) determined that the identification and debit card were valid, that Plaintiffs had done nothing wrong and they left the store. Defendant Althouse then completed the purchase of the tires using the debit card that had first been presented to him. (Compl., ¶ 34).

As a result of this incident, Plaintiffs filed this action on August 3, 2018 pursuant to 42 U.S.C. §1983 and Pennsylvania state law for false arrest, false imprisonment, illegal search and false detainment in violation of their Constitutional rights under the First, Fourth and Fourteenth Amendments. By virtue of the Motion which is now before us, Defendants Summerfield and Hatfield Township move to dismiss the claims against them for failure to state a claim upon which relief may be granted and/or on the grounds that they are qualifiedly immune from suit.

**Standards Governing Rule 12(b)(6) Motions**

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Renfro v. Unisys Corp., 671 F.3d 314, 320 (3d Cir. 2011). In reviewing a challenged pleading, the courts are required to accept all well-pleaded factual allegations as true and draw all reasonable inferences in the non-movant's favor. Ebert v. Prime Care Medical, Inc., No. 14-2020, 2015 U.S. App. LEXIS 1843 at *4 (3d Cir. Feb. 5, 2015); Krantz v. Prudential Investments Fund Management, 305 F.3d 140, 142 (3d Cir. 2002).

In so doing, reliance is placed upon "the complaint, attached exhibits, and matters of public record." Ebert, supra, (quoting Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007)).

Because Fed. R. Civ. P. 8(a)(2) requires a 'showing,' rather than a blanket assertion, of entitlement to relief, courts evaluating the viability of a complaint must look beyond conclusory statements and determine whether the complaint has alleged enough facts to state a claim to relief that is plausible on its face. Bell Atlantic v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929, 949 (2007); Renfro, supra. Indeed, it is no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts "to raise a right to relief above the speculative level." Umland v. Planco Financial Services, Inc., 542 F.3d 59, 64 (3d Cir. 2008)(quoting Philips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Examination of the context of the claim, including the underlying substantive law is therefore necessary in order to properly assess plausibility. Renfro, 671 F.3d at 321(citing In re Insurance Brokerage Antitrust Litigation, 618 F.3d 300, 320, n. 18 (3d Cir. 2010)).

**Discussion**

Plaintiffs first invoke 42 U.S.C. §1983 in asserting their First Cause of Action for civil rights violations against the Moving Defendants. Under Section 1983,

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …

It has thus been recognized that the threshold inquiry in a §1983 suit is the identification of the specific constitutional right at issue. Manuel v. City of Joliet, 137 S. Ct. 911, 920, 197 L. Ed.2d 312, (2017) (citing Albright v. Oliver, 510 U.S. 266, 271, 114 S. Ct. 807, 127 L. Ed.2d 114 (1994) (plurality opinion)). Then, "[a] plaintiff seeking relief under 42 U.S.C. §1983 must demonstrate 'that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury.'" Black v. Montgomery County, 835 F.3d 358, 364 (3d Cir. 2016) (quoting Elmore v. Cleary, 399 F.3d 279, 281 (2005)).

Plaintiff here has identified the First, Fourth and Fourteenth Amendments as the sources of the constitutional rights which he alleges Defendant violated. It is difficult to

6

discern how the First Amendment has any application here given that it guarantees the freedoms of speech, religion, the press and the right to peaceably assemble[1] and the Complaint alleges no facts suggestive of a violation of any of these rights.

The Fourth Amendment, however, states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

And the Fourteenth Amendment, in turn provides in relevant part:

> "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. Amend. XIV, §1.

The Fourteenth Amendment therefore effectively "incorporates" the protections of the Fourth and other Amendments, insofar as it "forbids states from depriving 'any person of life, liberty, or property without due process of law'"

---

[1] The First Amendment reads:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

7

and "contains both substantive and procedural components." Baker, 443 U.S. at 142-143, 99 S. Ct. at 2694; Holland v. Rosen, 895 F.3d 272, 292 (3d Cir. 2018) (quoting U.S. Const. Amend. XIV and Steele v. Cicchi, 855 F.3d 494, 501 (3d Cir. 2017)). See also, Mapp v. Ohio, 367 U.S. 643, 656, 657, 81 S. Ct. 1684, 1692, 6 L. Ed. 2d 1081 (1961)(noting that "Fourth Amendment's right of privacy has been declared enforceable against the States through the Due Process Clause of the Fourteenth" and that "the exclusionary rule is an essential part of both the Fourth and Fourteenth Amendments").

It has been observed that Section 1983 authorizes redress for violations of constitutional and statutory rights; it is not itself a source of substantive rights but is instead a method for vindicating federal rights elsewhere conferred. Baker v. McCollan, 443 U.S. 137, 144, n.3, 99 S. Ct. 2689, 2694, n.3, 61 L. Ed.2d 433 (1979); Pearson v. Prison Health Service, 850 F.3d 526, 534, n.2 (3d Cir. 2017). Inasmuch as the alleged facts in this matter cannot support a claim under Section 1983 for any violation of Plaintiffs' First Amendment rights, we dismiss such claims at the outset. We shall address Plaintiffs' other claims *seriatim.*

 A. *Plaintiffs' Claims Against Hatfield Township*

In like fashion, we shall dismiss outright Plaintiffs' claims against Hatfield Township. Indeed, the law is clear that

while local governing bodies may be sued directly under §1983 for monetary, declaratory or injunctive relief, a local government may **not** be sued under §1983 for an injury inflicted solely by its employees or agents. <u>Monell v. Department of Social Services of City of New York</u>, 436 U.S. 658, 690, 694, 98 S. Ct. 2018, 2035, 2037, 56 L. Ed.2d 611 (1978). Rather, it is only when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the municipal entity itself, that such a cause of action will lie. <u>Monell</u>, 436 U.S. at 690, 98 S. Ct. 2035-2036. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." <u>Connick v. Thompson</u>, 563 U.S. 51, 61, 131 S. Ct. 1350, 1359, 179 L. Ed.2d 417 (2011)(citing <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 480-481, 106 S. Ct. 1292, 89 L. Ed.2d 452 (1986)). Thus it is only when "the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation" that Section 1983 liability may attach. <u>Id</u>.; <u>Butler v. Lamont</u>, No. 17-3016, 732 Fed. Appx. 125, 126-127, 2018 U.S. App. LEXIS 20790 (3d Cir. July 26, 2018).

Here, the Plaintiffs' complaint is devoid of **any** allegations of wrongdoing on the part of Hatfield Township, nor

are there any alleged facts from which it may be inferred that the constitutional harms purportedly inflicted on Plaintiffs resulted from any policy, custom, practice or decision created or made by any policymaker, official or lawmaking body of the Township.  We therefore grant Moving Defendants' motion in its entirety as to and hereby summarily dismiss Hatfield Township from this lawsuit.

*B. Plaintiffs' False Arrest/False Imprisonment Claims*

For their First and Second Causes of Action, Plaintiffs advance claims against Moving Defendant for false arrest, false imprisonment[2] and illegal search under both federal and Pennsylvania state law.

Under the Fourth and Fourteenth Amendments, "[t]he standard for arrest is probable cause, defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.'" Gerstein v. Pugh, 420 U.S. 103, 111, 95 S. Ct. 854, 43 L. Ed.2d 54 (1975) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)).  "The inquiry in a §1983 false arrest claim is not whether the person arrested in fact committed the offense, but whether the facts

---

[2] Plaintiffs' complaint also purports to allege "false detainment" against Defendants.  Given that our research fails to reveal any separate cause of action under either federal or state law for "false detainment" and inasmuch as the dictionary definition of "detain" is to, *inter alia*, "keep in custody," we logically conclude that such claim is identical to and/or is subsumed in the claim for false arrest/false imprisonment.

10

and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonable person to believe that the offense has been or is being committed by the person to be arrested." Jackson v. Mills, Civ. A. No. 96-3751, 1997 U.S. Dist. LEXIS 14467 at *18 (E.D. Pa. Sept. 4, 1997) (citing Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995) and Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995)). In making this inquiry, "[a] court must look at the 'totality of the circumstances' and use a 'common sense' approach to the issue of probable cause." Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997).

Of course, of paramount importance in assessing a false arrest/false imprisonment claim is determining whether a detention did, in fact arise to the level of an "arrest" or an "imprisonment." Indeed, "[w]arrantless searches and seizures are presumptively unreasonable and are therefore prohibited under the Fourth Amendment unless an exception applies." United States v. Hester, 910 F. 3d 78, 84 (3d Cir. 2018)(quoting United States v. Mundy, 621 F.3d 283, 287 (3d Cir. 2010)). "One such exception to the warrant requirement permits brief, investigatory seizures commonly called 'Terry' stops" (after the landmark case Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed.2d 889 (1968)). Id. Such stops are permissible "when the officer has a reasonable, articulable suspicion that criminal

activity is afoot." Id, (quoting Illinois v. Wardlow, 528 U.S. 119, 123, 120 S. Ct. 673, 145 L. Ed.2d 570 (2000)).

However, "[w]hen the actions of the police do not show an unambiguous intent to restrain or when an individual's submission to a show of governmental authority takes the form of passive acquiescence, there needs to be some test for telling when a seizure occurs in response to authority, and when it does not." Brendlin v. California, 551 U.S. 249, 127 S. Ct. 2400, 2405, 168 L. Ed.2d 132 (2007). It is of course axiomatic that a seizure occurs when an officer "by means of physical force," however slight, or "show of authority" terminates or restrains a person's freedom of movement. Id, 127 S. Ct. at 2404 (quoting Florida v. Bostick, 501 U.S. 429, 434, 111 S. Ct. 2382, 115 L. Ed.2d 389 (1991) and Terry v. Ohio, supra.); California v. Hodari D., 499 U.S. 621, 626, 111 S. Ct. 1547, 1551, 113 L. Ed.2d 690 (1991). Under the Supreme Court's test, a seizure occurs "if 'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave;'" nor would "a reasonable person … feel free to decline the officers' request or otherwise terminate the encounter." Brendlin, 127 S. Ct. at 2405 (quoting, *inter alia,* Bostick, 501 U.S. at 435-436; Hodari D., 499 U.S. at 627; United States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed.2d 497 (1980) and Michigan v. Chesternut, 486 U.S. 567,

573, 108 S. Ctg. 1975, 100 L. Ed.2d 565 (1988)). "And in determining whether the seizure [and/or] search were 'unreasonable,' our inquiry is a dual one – whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 19-20, 88 S. Ct. at 1879.

Likewise, to establish false imprisonment under Pennsylvania law, a plaintiff must show: (1) that he has been detained, and (2) that the detention was unlawful. Gwynn v. City of Philadelphia, 719 F.3d 295, 304, n. 4 (3d Cir. 2013) (citing Renk v. City of Pittsburgh, 537 Pa. 68, 641 A.2d 289, 293 (Pa. 1994)). Inasmuch as in Pennsylvania, as under the Fourth Amendment, "detainment and confinement" constitute the gravamen of the "civil wrong committed by an individual who illegally arrests or employs authority over another while purportedly enforcing the law", it has been said that "false arrest and false imprisonment are merely different labels which describe the same conduct" and are "essentially the same claim" generally analyzed together. Olender v. Township of Bensalem, 32 F. Supp. 2d 775, 791 (E.D. Pa. 1999) (citing Gagliardi v. Lynn, 446 Pa. 144, 147, 285 A.2d 109, 110 (Pa. 1971)). See also, Davila v. United States, 247 F. Supp. 3d 650, 658 (W.D.

Pa. 2017); Watson v. Witmer, 183 F. Supp. 3d 607, 617 (M.D. Pa. 2016)) (same).

In applying these principles to this case, notwithstanding that none of the plaintiffs here were formally arrested and no criminal charges were filed, we nevertheless find that the Complaint adequately alleges a seizure of both Jacksons, father and son, insofar as the inference may easily be drawn that neither was free to walk out of the store or to disregard the defendant officer[s] requests to produce identification, turn around, walk outside or turn clothing pockets inside out. However, we cannot find that Officer Summerfield[3] acted unreasonably or unlawfully in so doing. Again, Defendant was responding to a report from the Mavis store manager that Plaintiffs were endeavoring to perpetuate a fraud and it was incumbent upon him to undertake appropriate steps to investigate. "Statements of a victim witness are typically sufficient to establish probable cause in the absence of independent exculpatory evidence or substantial evidence of a witness's own unreliability that outweighs the probable cause that otherwise exists." Dempsey v. Bucknell University, 834 F.3d 457, 478 (3d Cir. 2016)(quoting Wilson v. Russo, 212 F.3d

---

[3] Given that Officer Doe has not been identified, does not appear to have been served, and is not represented, we do not find him or her to be a party to this lawsuit, at least at this time. Accordingly, any references hereafter in this Memorandum to "Defendant" or "Defendants" shall be with regard to Officer Summerfield only.

781, 790 (3d Cir. 2000)). See also, Sharrar, 128 F.3d at 818-819. We find the steps taken by the officer[s] here, which included separating the Jacksons and speaking with them separately and looking into the validity of the elder Jackson's identification and his ownership of the debit card, to be reasonable and appropriate in scope to the circumstances presented. Accordingly, we conclude that Plaintiffs have failed to plead viable claims for false arrest/false imprisonment and we shall therefore grant the motion to dismiss Plaintiffs claims therefor as alleged in their First and Second Causes of Action.

*C. Plaintiffs' Unlawful Search Claim*

Plaintiffs also assert a claim under both federal and Pennsylvania state law for the warrantless search of Plaintiff Maxine Pride's vehicle.

It is axiomatic that "the Fourth Amendment does not proscribe all searches and seizures, but only those that are unreasonable," and reasonableness "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." Skinner v. Railway Labor Executives' Association, 459 U.S. 602, 619 (1989), 109 S. Ct. 1402, 103 L. Ed.2d 639 (1989)(quoting United States v. Montoya de Hernandez, 473 U.S. 531, 537 (1985), United States v. Sharpe, 470 U.S. 675, 682 (1985) and Schmerber v. California, 384 U.S. 757, 768 (1966)). "Except in certain well-defined

15

circumstances, a search or seizure … is not reasonable unless it is accomplished pursuant to a judicial warrant issued upon probable cause." Id. Thus, "searches conducted absent a warrant are *per se* unreasonable under the Fourth Amendment, subject to certain exceptions." United States v. Katzin, 769 F.3d 163, 169, *cert. denied,* 135 S. Ct. 1448, 191 L. Ed.2d 403 (3d Cir. 2014), (citing United States v. Harrison, 689 F.3d 301, 306 (3d Cir. 2012)). And, "[w]hile the interior of an automobile is not subject to the same expectations of privacy that exist with respect to one's home, a car's interior as a whole is nonetheless subject to Fourth Amendment protection from unreasonable intrusions by the police." New York v. Class, 475 U.S. 106, 114-115, 106 S. Ct. 960, 89 L. Ed.2d 81 (1986); United States v. Cook, 106 F. Supp.3d 573, 578 (E.D. Pa. 2015). When, however, officers have probable cause to believe that an automobile contains evidence of a crime, the Fourth Amendment does not require them to obtain a warrant prior to searching the car for and seizing the evidence, as the automobile exception to the Fourth Amendment's general rule requiring a search warrant is premised on both the ready mobility of automobiles and the lesser expectation of privacy in automobiles. United States v. Donahue, 764 F.3d 293, 299-300 (3d Cir. 2014); United States v. Mooty, 96 F. Supp. 3d 472, 491 (E.D. Pa. 2015)(citing Florida v. White, 526 U.S. 559, 563-64, 119 S. Ct. 1555, 143 L. Ed.2d 748

(1999) and California v. Carney, 471 U.S. 386, 390-93, 105 S. Ct. 2066, 85 L. Ed.2d 406 (1985)).  Pennsylvania common law is in accord.  See, Commonwealth v. Gary, 625 Pa. 183, 242, 91 A.3d 102, (2017)(holding that in Commonwealth of Pennsylvania, "the law governing warrantless searches of motor vehicles is coextensive with federal law under the Fourth Amendment.  The prerequisite for a warrantless search of a motor vehicle is probable cause to search; no exigency beyond the inherent mobility of a motor vehicle is required.").

Interestingly, in the matter at hand, Defendant's motion is silent as to Plaintiff Pride's claim that her vehicle was unlawfully searched.  Regardless, we find nothing in the pleadings which is in any way suggestive that Officer Summerfield (or any other Hatfield police officer) had **any** reason or reasonable suspicion that could in any way justify a search of Ms. Pride's car.  Defendant Althouse had reported what he suspected was an attempted fraudulent use of a debit card on the part of Robert Jackson, Sr. and Robert Jackson, Jr.  Giving Defendant the benefit of all possible doubt, while it may have been reasonable to ask Ms. Pride some questions regarding her relationship to the Jacksons and what knowledge she may have had regarding their identities, it is difficult to imagine what evidence could possibly have been obtained through a warrantless

search of her car.  We therefore shall deny the motion to dismiss with respect to the unlawful search claim.[4]

   D. *Punitive Damages*

   Finally, for their Third Cause of Action, Plaintiffs seek an award of punitive damages under Pennsylvania state law.  As a general rule, punitive damages may be awarded in Pennsylvania "for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." Estate of Lemington for the Aged v. Baldwin, 777 F.3d 620, 633 (3d Cir. 2015)(quoting Feld v. Merriam, 506 Pa. 383, 485 A.2d 742, 747 (Pa. 1984)).  "The state of mind of the actor is vital" – the "act or failure to act, must be intentional, reckless or malicious."  Id, (quoting Feld, 485 A.2d at 748).  In other words, "for punitive damages to be awarded there must be acts of malice, vindictiveness and a wholly wanton disregard for the rights of others."  Id, (quoting Tunis Brothers Co. v. Ford Motor Co., 952 F.2d 715, 741 (3d Cir. 1991)).

---

[4] In so holding, we reject Defendant's assertion that he should be found to be qualifiedly immune from suit. Under the qualified immunity doctrine, a government official exercising discretionary authority will be immune from liability for civil damages if "a reasonable officer could have believed [their actions] to be lawful, in light of clearly established law and the information the officer(s) possessed." Hunter v. Bryant, 502 U.S. 224, 227, 112 S. Ct. 534, 546, 116 L. Ed.2d 589 (1991).  If the plaintiff can show that the governmental official charged violated clearly established law of which a reasonable person should have known, qualified immunity cannot protect that official from suit. Gallo v. City of Philadelphia, 161 F.3d 217, 220, n. 4 (3d Cir. 1998).  Given that the law governing the necessity for probable cause to search an automobile was clearly established and should have been well known to Defendant at the time that the plaintiff's vehicle in this case was allegedly searched, we decline to dismiss this claim on the basis of qualified immunity at this point in the proceedings.

18

Indeed, "it takes a special type of recklessness to justify punitive damages in Pennsylvania. Brand Marketing Group, LLC v. Intertek Testing Services, N.A., 801 F.3d 347, 360 (3d Cir. 2015). "A punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." Id, (quoting Hutchison v. Luddy, 582 Pa. 114, 124, 870 A.2d 766, 772 (Pa. 2005).

In applying these principles here, we do not find that the facts alleged by Plaintiffs could support a finding that the Defendant, in temporarily detaining the Jacksons or in unlawfully searching the Pride vehicle, acted with the degree of malice or vindictiveness necessary to state a claim for punitive damages. See, e.g., Glass v. City of Philadelphia, 455 F. Supp. 2d 302 (E.D. Pa. 20060(finding punitive damages not warranted where Defendant police officers placed plaintiffs under arrest, searched their vehicle and held them for several hours without probable cause and in retaliation for filing earlier §1983 action against Philadelphia police department). Accordingly, the Plaintiffs' Third Cause of Action seeking punitive damages shall also be dismissed.

## Conclusion

For all of the reasons outlined above, Defendants' Motion to Dismiss shall be granted in part and denied in part pursuant to the attached Order.